1999-NMCA-022

973 P.2d 246

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Charles Lamont TAYLOR, Defendant–Appellee.**

**No. 18681.**

Court of Appeals of New Mexico.

Nov. 25, 1998.

Certiorari Denied, No. 25,515, Jan. 6, 1999.

570

Tom Udall, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellant.

Marc H. Robert, Barnett, Allison & Robert, Albuquerque, for Appellee.

*OPINION*

FLORES, Judge.

{1} The State appeals from the trial court's order granting Defendant's motion to suppress evidence. Defendant argued, and the trial court agreed, that Defendant's federal and state constitutional right to be free from unlawful searches was violated when, during an investigatory stop, a second officer approached Defendant and began questioning him without reasonable suspicion. Although we agree with the State that the trial court erred in concluding that the second officer was required to have independent reasonable suspicion before approaching and questioning Defendant, we uphold the trial court's order suppressing the evidence of cocaine because the second officer's questions exceeded the scope of the reasonable suspicion, and because Defendant's consent, even if voluntary, did not purge the taint of the illegal questions. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} On August 28, 1996, Officer Greg Tiano (Officer Tiano), who was on patrol alone, was stopped by a citizen, Jay Beam (Beam). Beam informed Officer Tiano that he had seen a white, two-door Oldsmobile sedan that looked like the car used in the theft of his air compressor approximately six months earlier. Beam also told Officer Tiano that he had seen the two men in the Oldsmobile throwing trash out the windows of the car. Based on this citizen complaint, Officer Tiano decided to investigate, in part because littering is a citable offense. Because Beam could not provide verbal directions to the location of the Oldsmobile, Officer Tiano followed Beam to a dirt lot where the identified car was parked. Lamont Taylor (Defendant) was in the car, as was Larry Johnson, a passenger. When Officer Tiano arrived, approximately seventeen other people were present in the parking lot.

{3} Officer Tiano parked approximately fifty or sixty feet in front of Defendant's car. Because he considered this parking position unsafe, Officer Tiano radioed for backup before approaching Defendant's car. Officer Tiano then approached Defendant and his passenger and informed them that he had been told that they were littering. Defendant and his passenger denied throwing trash. Officer Tiano was satisfied that he could do nothing more regarding the littering allegation, but asked the men in the car if they would produce identification. They agreed. Officer Tiano then asked if he could check for wants and warrants. The men agreed, so Officer Tiano returned to his vehicle to run the check for wants and warrants.

{4} Officer Tiano waited no longer than two minutes for backup to arrive, and then began the wants and warrants check. Officer Nelson was the first backup officer to

arrive. Officer Nelson arrived in a second vehicle and immediately engaged in a brief conversation with Officer Tiano about the nature of the ongoing investigation. Based on this conversation, Officer Nelson believed that Officer Tiano was in possession of Defendant's driver's license and that Officer Tiano intended to continue his investigation. Officer Nelson then parked behind Defendant's car without blocking Defendant's egress. While Officer Tiano was performing the wants and warrants check, Officer Nelson approached Defendant and asked him if he had any guns, alcohol, or illegal drugs in the car. Defendant said that he did not. Officer Nelson then asked if he could search Defendant's car to see if there were any guns, alcohol, or illegal drugs. Defendant agreed. Upon Officer Nelson's request, Defendant and his passenger stepped out of the vehicle so that Officer Nelson could conduct the search. During his search of the car, Officer Nelson found a cigarette package located between the seat and the hump of the transmission housing that contained what appeared to be several rocks of crack cocaine. After having a mobile drug investigation unit confirm that the rocks were cocaine, Officer Nelson arrested Defendant.

{5} At some point during this interaction, a third police officer arrived. Officer McFeeters parked his patrol car behind Officer Nelson's car. The record is unclear, but it appears that Officer McFeeters did not actively participate in the questioning, search, or arrest of Defendant. Likewise, Officer Tiano did not take part in the search and arrest. Officer Tiano completed his wants and warrants check, which uncovered no outstanding wants or warrants, just as Defendant was being arrested for possession of cocaine with intent to distribute, contrary to NMSA 1978, § 30–31–20 (1990). Prior to trial, Defendant moved to suppress the evidence of crack cocaine. The court granted Defendant's motion on the ground that Officer Nelson did not have reasonable suspicion necessary to conduct a second investigatory stop.

{6} On appeal, the State argues that Officer Nelson's approach of Defendant was not a second investigatory stop requiring reason-able suspicion, but was part of Officer Tiano's initial, and valid, investigatory stop. As a consequence, Officer Nelson was permitted to seek consent to search Defendant's car. In addition, the State argues that the search itself was valid because it was conducted with Defendant's voluntary consent. Accordingly, the evidence of crack cocaine was obtained lawfully and was therefore admissible. We will address each issue in order.

## II. DISCUSSION

### A. The Initial Investigatory Stop Was Valid Because it was Based on Reasonable Suspicion

{7} We first address whether Officer Tiano's initial approach of Defendant's vehicle was supported by reasonable suspicion of criminal activity, or was a pretextual approach in order to investigate a more serious offense. A police officer may approach an individual in order to investigate possible criminal behavior when the officer has "a reasonable suspicion that the law has been or is being violated." *State ex rel. Taxation & Revenue Dep't, Motor Vehicle Div. v. Van Ruiten,* 107 N.M. 536, 538, 760 P.2d 1302, 1304 (Ct.App.1988). An investigatory stop is based on reasonable suspicion if the officer is "aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Pallor,* 1996–NMCA–083, ¶ 12, 122 N.M. 232, 923 P.2d 599 (citations and internal quotations omitted).

{8} Here, Officer Tiano approached Defendant's vehicle after receiving a tip from a citizen. The citizen informed Officer Tiano that he had seen two men in a white Oldsmobile littering, and that their car resembled the car used in the theft of an air compressor from the citizen's home approximately six months earlier. Because the citizen was unable to provide directions to the Oldsmobile, Officer Tiano followed the citizen to the parking lot where the Oldsmobile was parked. Whether the officer's approach at that point was based on reasonable suspicion depends on whether this tip, and the citizen's ability to bring the officer to the site of the

Oldsmobile, would warrant a person of reasonable caution to believe that Defendant had violated or was violating a law. *See Van Ruiten,* 107 N.M. at 539, 760 P.2d at 1305. Because "[a] person who purports to be a witness or a victim of a crime may be presumed reliable," *State v. Michael G.,* 106 N.M. 644, 647, 748 P.2d 17, 20 (Ct.App.1987), we hold that a person of reasonable caution would have believed that Defendant was violating the law in this case. The citizen's tip in this case was reliable because the citizen was both a witness to littering and a victim of theft. Given reasonable suspicion, we affirm the trial court's determination that the initial investigatory stop was valid. *See State v. Jones,* 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.1992) (whether facts amount to reasonable suspicion is a question of law to be reviewed de novo).

{9} Defendant contends that Officer Tiano could not have arrested Defendant for misdemeanor littering because Officer Tiano did not actually observe Defendant littering. *See State v. Johnson,* 1998–NMCA–019, ¶ 10, 124 N.M. 647, 954 P.2d 79 (common-law misdemeanor arrest rule restricts warrantless arrests to offenses committed in the arresting officer's presence). Although the officer may not have been able to arrest Defendant for this misdemeanor, he had a valid basis to investigate the commission of the alleged crime. *See* NMSA 1978, § 30–8–5 (1975). Additionally, Officer Tiano could have cited Defendant for littering without actually arresting him. *See* NMSA 1978, § 30–8–4(B) (1981) (authorizing use of uniform traffic citations for enforcement of statute prohibiting littering). Thus, it was appropriate for Officer Tiano to approach Defendant to investigate the citizen complaint.

{10} Moreover, we know of no law, and Defendant has cited none, that limits investigatory stops to suspected felony offenses. Thus, the officer's stop of Defendant was valid even though the littering allegation was only a misdemeanor. *See* 4 Wayne R. La-Fave, *Search and Seizure* § 9.2(c), at 29 (3d ed. 1996) ("With rare exception, cases declaring that the stop was improper because of the nature of the offense under investigation have been decided upon a statutory pro-

vision limiting stops to the investigation of certain crimes.") (footnotes omitted).

{11} Finally, Defendant's reliance on *State v. Frazier,* 88 N.M. 103, 537 P.2d 711 (Ct.App.1975), to argue that this Court has held that "officers did not have reasonable suspicion on which to base an investigatory stop where a citizen provided information of the commission of minor infractions" is misplaced. *Frazier* is distinguishable from the instant case because the citizen complaint in *Frazier* did not allege any criminal violations whatsoever. *See* 88 N.M. at 104–05, 537 P.2d at 712–13. Thus, the Court concluded that the police had no grounds to believe that any criminal violation had occurred. Here, on the other hand, the citizen complaint alleged two criminal violations. This was enough to justify the officer's investigation.

{12} We also hold that Defendant's claim that the approach was pretextual is meritless. *See Pallor,* 1996–NMCA–083, ¶ 12 ("Having determined that the standard of reasonable suspicion had been met, the claim of a pretextual stop cannot be substantiated."); *State v. Bolton,* 111 N.M. 28, 33, 801 P.2d 98, 103 (Ct.App.1990) ("[T]o overcome a claim that a search or seizure was pretextual, the state need prove only a valid legal basis for the intrusion[,]" such as reasonable suspicion).

B. *Because Officer Nelson Approached and Questioned Defendant While Officer Tiano's Investigation Was Ongoing, Officer Nelson Did Not Need Independent or Additional Reasonable Suspicion*

{13} The trial court granted Defendant's motion to suppress the evidence of crack cocaine obtained in the search of the vehicle on the grounds that Officer Nelson's approach of Defendant amounted to a second investigatory stop made without the requisite reasonable suspicion. The State argues on appeal that the trial court improperly granted Defendant's motion to suppress because Officer Nelson's conduct was not a second investigatory stop, but simply a continuation of the ongoing investigation initiated by Officer Tiano. We agree.

■ {14} When Officer Nelson approached and questioned Defendant, Officer Tiano was in the process of performing a permissible wants and warrants inquiry. Once a police officer has made a valid investigatory stop, such as this one, the officer is entitled to verify that "the driver is both licensed and driving a car that is registered and insured." *State v. Reynolds,* 119 N.M. 383, 388, 890 P.2d 1315, 1320 (1995); *City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 13, 124 N.M. 661, 954 P.2d 93. In addition to asking to view those documents, the officer is entitled to run a wants and warrants check to ensure their continued validity. *See United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988) (A police "officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation."), *overruled on other grounds by United States v. Botero–Ospina,* 71 F.3d 783 (10th Cir. 1995). Therefore, Officer Tiano was permitted to ask Defendant for his driver's license, automobile registration, and proof of insurance, and was permitted to conduct a wants and warrants check incident to the lawful investigatory stop. Moreover, Officer Tiano also had Defendant's consent to perform the wants and warrants check. Defendant's consent in this regard is not contested in any way. Thus, the detention was permissibly extended under *Reynolds,* and was not yet completed when Officer Nelson questioned Defendant.

■ {15} Additionally, Officer Tiano retained Defendant's driver's license throughout the wants and warrants check so that Defendant was not yet free to leave when Officer Nelson began questioning him. *See United States v. Lambert,* 46 F.3d 1064, 1068 (10th Cir.1995) ("[W]hen law enforcement officials retain an individual's driver's license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter."); *see also* LaFave, *supra,* § 9.3(a), at 102–03 & n. 74; *cf. Reynolds,* 119 N.M. at 386, 890 P.2d at 1318 (checking for driver's license, registration, and insurance is a seizure). This indicates that Defendant was already seized, and continued to be seized, when Officer Nelson approached Defendant. Because Officer Nelson could not then seize Defendant, Officer Nelson did not need reasonable suspicion beyond that created by the citizen complaint.

{16} Finally, we see no meaningful distinction between this case, in which the two investigating officers arrived separately but within moments of each other, and who conferred with each other about the nature of the investigation, and a case in which two officers arrive together in the same vehicle. In the latter case, it is unquestionable that the second officer would not need independent reasonable suspicion before questioning the defendant. The case before us is essentially the same. In *State v. Magnano,* 204 Conn. 259, 528 A.2d 760 (1987), the court discussed a similar issue:

> [T]he initial officers responded to the defendant's call that an intruder was in the house. During the course of the response they legitimately searched and secured the premises, observing items of evidence in plain view. Pursuant to department policy, they did not attempt to take any evidence into custody. The detectives arrived on the scene only thirty-five minutes after the responding officers' initial entry and while they were still on the premises. They proceeded to process evidence and to take photographs and measurements.... *We conclude that under the facts of this case, the initial entry of the patrol officers and subsequent entry of the detectives were analytically inseparable, and that the later entry was a mere continuation of the earlier legal entry.* As such, the photographs and measurements depicting the plain view observations of the patrol officers who had responded to the emergency were admissible.

*Id.* at 766 (emphasis added). Just as the detectives continued the earlier investigation in *Magnano,* Officer Nelson's actions were a continuation of the investigation initiated by Officer Tiano. Thus, the trial court erred in holding that Officer Nelson needed independent reasonable suspicion before lawfully approaching Defendant.

C. *Officer Nelson Impermissibly Exceeded the Scope of the Reasonable Suspicion*

{17} Although the trial court erred in requiring additional reasonable suspicion, we

nevertheless affirm the trial court's suppression of cocaine evidence because Officer Nelson's questions exceeded the scope of the reasonable suspicion, thereby tainting Defendant's consent and rendering any evidence obtained pursuant to Defendant's consent inadmissible as fruits of the poisonous tree. *See State v. Beachum,* 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972) ("A decision of the trial court will be upheld if it is right for any reason.").

1. *An Officer's Conduct and Questioning During an Investigatory Stop Are Constrained by the Facts Giving Rise to the Officer's Reasonable Suspicion*

{18} As this Court's recent opinion in *Haywood* explains, the scope of an officer's activities during a valid investigatory stop is limited:

> Under *Werner,* "[a]n officer who makes a valid investigatory stop may briefly detain those he suspects of criminal activity to verify or quell that suspicion." 117 N.M. at 317, 871 P.2d at 973. "The scope of activities during [this] investigatory detention *must be reasonably related* to the circumstances that initially justified the stop." *Id.* (relying on *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (emphasis added); *accord State v. Bidegain,* 88 N.M. 466, 469, 541 P.2d 971, 974 (1975) ("A police officer making a lawful stop of a motorist is not precluded from making *reasonable inquiries* concerning the purpose or purposes for the stop." (emphasis added)); *United States v. Perez,* 37 F.3d 510, 513 (9th Cir.1994) ("Questions asked during an investigative stop must be '*reasonably related in scope* to the justification for their initiation.'" (emphasis added, citation omitted))[.]

1998–NMCA–029, ¶ 15, 124 N.M. 661, 954 P.2d 93.

{19} Here, immediately prior to requesting consent to search Defendant's car, Officer Nelson asked Defendant if he had any weapons, and then asked if he had any illegal drugs or alcohol in the car. Defendant responded that he did not have guns, drugs, or alcohol.

{20} An officer may expand the scope of his detention beyond that which is reasonably related to the circumstances which justified his initial stop only where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot. *See Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."). *See generally* Thomas Fusco Annotation, *Permissibility Under Fourth Amendment of Detention of Motorist by Police, Following Lawful Stop for Traffic Offense, to Investigate Matters Not Related to Offense,* 118 A.L.R. Fed. 567 (1994). Here, Officer Nelson was not entitled to ask about illegal drugs and alcohol because drugs and alcohol were unrelated to the purpose of the investigatory stop, which was to investigate allegations of littering and a larceny which had occurred approximately six months earlier. *See Haywood,* 1998–NMCA–029, ¶¶ 15, 18. Whereas Officer Nelson was only entitled "to verify or quell [the] suspicion" that prompted the investigatory stop, *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994), he nonetheless inquired beyond the subjects of littering and larceny by asking about the presence of drugs and alcohol. *See id.* ("The scope of activities during [this] investigatory detention must be reasonably related to the circumstances that initially justified the stop."). Officer Nelson testified that he asked Defendant these questions because he always asks such questions, and not because he had any basis to believe that Defendant had drugs or alcohol in his car. Neither officer testified that there were any articulable facts or conduct which indicated that they had reason to believe that Defendant was in possession of illegal drugs or alcohol. *Cf. Perez,* 37 F.3d at 514 (finding individual factors observed by officer cumulatively amounted to reasonable suspicion to justify questioning defendant about guns, drugs, or money). Thus, Officer Nelson's question went beyond the scope of investigation.

{21} We recognize that an officer's suspicions may broaden during an investigatory stop to include matters unrelated to the initial reason for the stop. Our holding today does not, in any way, limit an officer's ability to pursue matters that arise during the course of the stop which cause the officer reasonable suspicion. *See United States v. Barahona*, 990 F.2d 412, 416 (8th Cir.1993) ("For a detention to be reasonable, an officer's questions must relate to the purpose of the stop. However, if the responses of the detainee and the circumstances give rise to suspicions unrelated to the ... offense, an officer may broaden his inquiry and satisfy those suspicions.") (citations omitted).

{22} Thus, the subjects of drugs and alcohol could have come within the scope of the officers' investigation if evidence of drugs and alcohol had become apparent during their interactions with Defendant. However, nothing in the investigation reasonably raised the officers' suspicion of any criminal activity other than littering or larceny and the officers observed no conduct which tended to indicate that Defendant was in possession of drugs or alcohol. Therefore, it was impermissible for Officer Nelson to inquire about the possession of illegal drugs and alcohol when the initial stop was not in any way related to drugs and alcohol, and nothing uncovered during the investigatory stop indicated that Defendant may have been in possession of illegal drugs and alcohol. The police are not entitled to go on fishing expeditions simply because the investigation is continued while waiting for the results of the wants and warrants check. *See Werner*, 117 N.M. at 319, 871 P.2d at 975 ("[T]he expansion of the investigation to look, search, or fish elsewhere is not contemplated for investigatory stops.").

{23} Any questioning and searching for weapons during a stop made to investigate unrelated matters must be based on specific, articulable facts, not unsupported intuitions or inarticulate hunches. *See State v. Galvan*, 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App.1977). An investigatory stop based on reasonable suspicion may only be expanded beyond the scope of that stop if the officers have identified additional suspicious

circumstances. *See Perez*, 37 F.3d at 513 ("Questions asked during an investigative stop must be 'reasonably related in scope to the justification for their initiation.' An officer may broaden his or her line of questioning if he or she notices additional suspicious factors, but *these factors must be 'particularized' and 'objective* [.]' ") (citations omitted) (emphasis added); *cf. State v. Flores*, 1996–NMCA–059, ¶ 17, 122 N.M. 84, 920 P.2d 1038 ("During an investigatory stop, when an officer *reasonably believes* the individual may be armed and dangerous, he or she may check for weapons to ensure personal safety. The nature of the crime being investigated may also justify a patdown search. However, the scope of a weapons search under *Terry* must be limited to its protective purpose. A limited *Terry* search for weapons may not be expanded without probable cause into a search for evidence of a crime.") (citations omitted) (emphasis added).

{24} Here, neither officer identified particularized, objective factors that caused them to suspect that Defendant had a weapon. Additionally, even if the officers were permitted to make a *Terry* search of the car for weapons, such a search would not include the removal of a cigarette pack found between the car seat and transmission housing and the search of that package that uncovered the rocks of cocaine. *See State v. Arredondo*, 1997–NMCA–081, ¶¶ 22–23, 123 N.M. 628, 944 P.2d 276.

{25} Nothing in this opinion would prohibit an officer from questioning a person on any subject during an encounter that does not rise to the level of a stop or seizure. *See Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). However, when a person is subject to police constraint that does implicate the Fourth Amendment, such as when there is an investigatory stop, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion." *Id.* at 500, 103 S.Ct. 1319. The State does not suggest that this case should be analyzed as an encounter not covered by the Fourth Amendment; it concedes that the proper analysis is that of investigative stop. Its contention is that the questioning did not

involve "an expansion of the intrusiveness of the stop." For the reasons given above, the questioning unrelated to the rationale for the stop, which amounted to a fishing expedition from which Defendant could not walk or drive away, did expand the intrusiveness of the stop and consequently was not permissible.

2. *Officer Nelson's Impermissible Questions Were Not Sufficiently Attenuated From Defendant's Consent to Purge the Taint of Illegality*

{26} The State has argued that any illegality in Officer Nelson's conduct is vitiated by Defendant's voluntary consent to the search for guns, drugs, and alcohol. Consequently, argues the State, the evidence of cocaine should not have been suppressed. Voluntariness is not the precise concern raised by these facts, however. The question before us is whether Defendant's consent was tainted by the prior illegality (exceeding the scope of the reasonable suspicion), such that the evidence obtained in the consensual search is no longer admissible under the exclusionary rule.

{27} The Fourth Amendment taint analysis is distinct from the voluntariness analysis required by the Fifth Amendment. For evidence obtained in a consensual search to be admissible under a Fourth Amendment challenge, the consent must be both voluntary and purged of all taint under a Fourth Amendment challenge. *See State v. Bedolla*, 111 N.M. 448, 455, 806 P.2d 588, 595 (Ct.App. 1991); 3 LaFave, *supra*, § 8.2(d), at 656 ("evidence obtained by the purported consent should be held admissible only if it is determined that the consent was *both* voluntary and not an exploitation of the prior illegality."). We need not address whether the consent was voluntary in this case because we conclude that the consent was tainted by Officer Nelson's illegal questioning, and that the taint was not removed.

{28} In order for evidence obtained after an illegality, but with the voluntary consent of the defendant, to be admissible, there must be "a break in the causal chain from the [illegality] to the search[.]" *State v. Jutte*, 126 N.M. 244, 250, 968 P.2d 334, 340 (App.1998); *accord Bedolla*, 111 N.M. at 454–55, 806 P.2d at 594–95 (citing *Brown v. Illinois*, 422 U.S. 590, 601–02, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). "[T]he proper question in evaluating whether a consent was tainted by prior illegality is whether there was '[sufficient] attenuation between the [illegality] and the consent to search.'" *Bedolla*, 111 N.M. at 453, 806 P.2d at 593 (quoting *State v. Cohen*, 103 N.M. 558, 564, 711 P.2d 3, 9 (1985).) In deciding whether the consent is sufficiently attenuated from the Fourth Amendment violation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *See Bedolla*, 111 N.M. at 455, 806 P.2d at 595.

{29} Here, there was no attenuation whatsoever. Officer Nelson asked the improper questions immediately before asking for consent to search, and no other events occurred to separate the consent and the questions. More significantly, the purpose of requesting consent to search was to verify Defendant's answers to the improper questions. Thus, the very purpose of seeking consent was to continue an investigation that was beyond the scope of the officer's reasonable suspicion. Thus, we conclude that the consent was not sufficiently attenuated from the illegality to remove its taint.

III. *CONCLUSION*

{30} For the foregoing reasons, we conclude that the trial court's rationale for suppressing the evidence was erroneous, but that the evidence should have been suppressed on the ground that Officer Nelson's questions were not within the scope of the reasonable suspicion and Defendant's consent did not purge the taint of the illegal questions. Thus, we affirm.

{31} **IT IS SO ORDERED.**

PICKARD, J., concurs.

DONNELLY, J., (dissenting).

DONNELLY, Judge (Dissenting).

{32} I disagree with the decision of the majority which holds that a police officer who makes a valid stop of a motorist is precluded from asking any questions of the person detained if the inquiries go beyond those related to the purposes leading to the initial stop. Specifically, I disagree with the majority's conclusion that because Officer Nelson asked Defendant whether he had any guns, alcohol, or illegal drugs in his car, his inquiry tainted and rendered Defendant's subsequent consent to search the vehicle unlawful.

{33} Both the United States Supreme Court, in *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and our Supreme Court, in *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994), have held that an officer who makes a valid stop of an individual may not expand the scope of the detention beyond that which is reasonably related to the circumstances which justified the initial stop, unless the officer has a reasonable and articulable suspicion that other criminal activity has been or may be occurring. I do not believe, however, that either *Terry* or *Werner* precludes a law enforcement officer from *asking questions about possible illegal conduct* if the initial stop of the individual is lawful and if the questioning does not materially extend the duration of the individual's initial detention.

{34} When an officer has made a valid investigatory stop of a motorist, he is permitted to verify whether the driver is licensed and is operating a car that is properly registered and insured. *See State v. Reynolds*, 119 N.M. 383, 388, 890 P.2d 1315, 1320 (1995). The officer may also, under such circumstances, run a computer check to verify such information and determine if the individual stopped has any outstanding warrants or charges pending against him. *See United States v. Hunnicutt*, 135 F.3d 1345, 1348-49 (10th Cir.1998).

{35} Here, the questions posed to Defendant came while Officer Tiano was awaiting the results of the computer check following an initial lawful stop, and Defendant gave his consent to the search. Thus, neither the questions of Officer Nelson nor the search extended the duration of the initial detention.

As observed by Justice Oman in *State v. Bidegain*, 88 N.M. 466, 469-70, 541 P.2d 971, 974-75 (1975): "There is nothing wrong with an officer asking for information or asking for permission to make a search.... A search authorized by consent is an exception to the requirements of both a warrant and probable cause and is wholly valid." (Citations omitted.)

{36} Both *Terry* and *Werner* primarily focused on the basis for detaining an individual who has been stopped based on reasonable suspicion for further investigation beyond the purposes of the initial stop. In the present case the detention was not extended by the questions asked by Officer Nelson. Additionally, the present case is distinguishable from *City of Albuquerque v. Haywood*, 1998-NMCA-029, 124 N.M. 661, 954 P.2d 93, because the inquiries here, and Defendant's consent to search, occurred prior to completion of the check for outstanding wants and warrants.

{37} As pointed out by the court in *Hunnicutt*, a routine traffic stop is a seizure within the meaning of the Fourth Amendment to the United States Constitution. *See* 135 F.3d at 1348; *see also Reynolds*, 119 N.M. at 388, 890 P.2d at 1320 (detention during check of driver to determine validity of registration, driver's license, and insurance records does not violate the Fourth Amendment of the United States Constitution or Article II, Section 10 of the New Mexico State Constitution). However, this type of stop has been found to be more analogous to an investigative detention than a custodial arrest. *See Hunnicutt*, 135 F.3d at 1348. Such stops are generally analyzed under principles involving investigative detentions articulated in *Terry*. *See Hunnicutt; see also State v. Cohen*, 103 N.M. 558, 561, 711 P.2d 3, 6 (1985); *cf. State v. Estrada*, 111 N.M. 798, 800, 810 P.2d 817, 819 (Ct.App. 1991) (further detention of defendant after reason for valid stop expires is analogous to initial *Terry* stop). In assessing the reasonableness of an investigative detention, the courts make a two-part inquiry. First, the court ascertains whether the officer's action was justified at its inception, and second, the court determines whether the investigative

detention was reasonably related in scope to the reasons which prompted the stop in the first place. *See Hunnicutt*, 135 F.3d at 1348.

{38} The *Hunnicutt* court further notes: The investigative detention usually must "last no longer than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).

Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. *See United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir.1993). Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter. *See [United States v.] Gonzalez–Lerma*, 14 F.3d [1479,] at 1483 [ (10th Cir.1994) ].

135 F.3d at 1349.

{39} The mere fact that an individual has been detained, or even arrested, does not per se invalidate an otherwise voluntary consent to search. *See State v. Blakely*, 115 N.M. 466, 469, 853 P.2d 168, 171 (Ct.App.1993).

{40} If there is a valid basis for the stop, it is permissible for the officers to ask permission to search the vehicle. *See State v. Pallor*, 1996–NMCA–083, ¶ 16, 122 N.M. 232, 923 P.2d 599; *see also State v. Bolton*, 111 N.M. 28, 42–43, 801 P.2d 98, 112–13 (Ct.App. 1990). The test to determine the validity of consent is whether under the totality of the circumstances the consent was voluntary and no coercion, actual or threatened, was employed. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 223–27, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Blakely*, 115 N.M. at 469, 853 P.2d at 171.

{41} Under these circumstances, I am unable to agree with the majority that merely asking questions, which touch on subjects beyond the scope of the basis for the initial stop, and which do not materially lengthen the initial detention, automatically taints an individual's subsequent consent. In such instance, the court should evaluate the validity of the consent under the totality of the circumstances. I would reverse and remand the case to the trial court for an express determination of whether Defendant's consent was freely and voluntarily given so as to validate the basis for the search and seizure.