## STATE V. BYLON-ESCOBEDO

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**MAURICIO BYLON-ESCOBEDO,**
**Defendant-Appellant.**

Docket No. A-1-CA-34258
COURT OF APPEALS OF NEW MEXICO
May 22, 2019

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY, Jeff McElroy, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Charles J. Gutierrez, Assistant Attorney General, Albuquerque, NM for Appellee

Law Offices of Jennifer J. Wernersbach, P.C., Jennifer J. Wernersbach, Albuquerque, NM for Appellant.

**JUDGES**

J. MILES HANISEE, Judge. WE CONCUR: M. MONICA ZAMORA, Judge KRISTINA BOGARDUS, Judge

**AUTHOR:** J. MILES HANISEE

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Defendant entered a conditional guilty plea for trafficking a controlled substance, contrary to NMSA 1978, Section 30-31-20 (2006). Defendant appeals the district court's denial of his motions to suppress, having reserved the right to do so in his plea agreement. On appeal, Defendant raises all the issues raised in his motion to suppress: (1) the traffic stop and expansion thereof were unconstitutional; (2) the ensuing search

was not based on valid consent; (3) the State should be sanctioned for deliberate failure to collect evidence; and (4) Defendant's *Miranda* rights were violated.

**{2}**     We affirm the district court's denial of Defendant's motions to suppress, concluding the district court's findings are supported by substantial evidence that does not reveal any constitutional violation. We likewise agree with the district court that the State should not be sanctioned for failure to collect evidence. Lastly, we hold Defendant failed to adequately preserve and, on appeal, develop his *Miranda* argument, and has therefore failed to establish fundamental error.

## BACKGROUND

**{3}**     The following facts were elicited at the first suppression motion hearing through the testimony of the law enforcement officers and by use of a dash cam video recording of the traffic stop, which was admitted as an exhibit during the hearing. Defendant was stopped by state police officers for speeding. Officer Saiz, an officer on field-training status who was accompanied on patrol by Officer Skidmore, made contact with Defendant and another male passenger (Passenger). Upon request, Defendant provided proof of insurance, registration, and identification to Officer Saiz, who took the documents to the patrol unit in order to issue a traffic citation. Officer Saiz was not able to complete the citation, however, because Defendant's identification was in the form of a Mexican driver's license, on which Officer Saiz could not locate Defendant's birthdate. Also, in reviewing the documents provided by Defendant, Officer Saiz noticed that the name on Defendant's driver's license did not match that of the registered vehicle owner.

**{4}**     Because of these circumstances, and to attempt completion of the traffic citation, Officer Skidmore reapproached Defendant to verify his identity. Defendant stated then that his name was "Omar" and that the registered owner of the vehicle was not present. Because Defendant's driver's license did not contain the name "Omar," Officer Skidmore sought further clarification from Defendant, who then denied he ever stated his name was Omar.

**{5}**     Thereafter, Officer Skidmore requested that Defendant exit the vehicle and asked if he had a wallet in order to locate additional identification to confirm Defendant's name, date of birth, and address for the traffic citation. Defendant handed his wallet to Officer Skidmore, in which he noticed a large amount of cash. Because Defendant's wallet contained no further information, Officer Skidmore asked Defendant for his address. Defendant responded that he did not know his address but he lived in Taos. Officers Skidmore and Saiz then asked Defendant and Passenger where they were going and received inconsistent answers.

**{6}**     Officer Skidmore next asked Defendant if there was anything in the vehicle he "needed to know about" and whether there were drugs inside. Defendant responded in the negative but informed Officer Skidmore that his daughter was in the vehicle. Officer Skidmore asked Defendant if he could search the vehicle. Defendant hesitated, reiterating that his daughter was in the vehicle. Officer Skidmore assured Defendant he

would not disturb his daughter, at which point Defendant consented to the search by saying "Yes" and shaking his head affirmatively.

**{7}** During the search, the officers found cocaine and a large sum of cash in the console of the vehicle. The officers then placed Defendant in handcuffs. The dash-cam video appears to show Officer Saiz reading Defendant his *Miranda* rights.[1] Thereafter, the officers asked Defendant about the cocaine and money found in the vehicle, and Defendant admitted the items were his.

## Untimely Motions to Suppress

**{8}** In district court, Defendant filed two untimely motions to suppress. "A motion to suppress shall be filed no less than sixty (60) days prior to trial, unless, upon good cause shown, the trial court waives the time requirement." Rule 5-212(C) NMRA. Even though the motions were untimely, the district court held suppression hearings on the merits of both motions. The district court denied both motions on the merits and also denied the second motion because it was untimely.

**{9}** Defendant's first motion asserted that the traffic stop was pretextual, officers unreasonably expanded the scope of the stop, Defendant's consent to search the vehicle was not voluntary, and Officer Skidmore deliberately withheld evidence by turning off his audio recording equipment at various points of the traffic stop. Defendant's second motion reasserted the issues raised in the first motion and also argued that Defendant was not properly provided his *Miranda* warnings prior to confessing that the cocaine found in the vehicle belonged to him. The State strongly urges this Court to hold that the second motion to suppress was properly denied as untimely and not justified by good cause—even though both motions to suppress were untimely.

**{10}** Because the district court held hearings and ruled on Defendant's substantive arguments, we proceed to review the issues presented in Defendant's suppression motions on their merits. *See Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 30, 135 N.M. 423, 89 P.3d 672 ("[E]ven if the motion was untimely, where the trial court addresses an untimely motion on the merits, an appellate court may review the question presented.").

## DISCUSSION

### A. Standard of Review

**{11}** "Appellate review of a motion to suppress presents a mixed question of law and fact. First, we look for substantial evidence to support the district court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (alteration, internal quotation marks, and citations omitted). "We then review the application of the law to

---

1Although the entire traffic stop was recorded on the patrol unit dash camera, portions of the video recording, including the portion where it appears Defendant is being *Mirandized*, do not contain audio.

those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (internal quotation marks and citation omitted).

## B.     The Traffic Stop Was Not Pretextual

**{12}**     Defendant argues that suppression was required because officers stopped him for a pretextual reason, which this Court prohibited in *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143. A pretextual traffic stop occurs when "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred . . . is executed as a pretense to pursue . . . a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." *Id.* ¶ 25. Defendant claims he was subjected to a pretextual stop because officers allegedly pulled him over for appearing to be Mexican and based on their desire to fulfill traffic citation requirements of the New Mexico State Police (NMSP) patrol plan.

**{13}**     This Court follows a three-step approach to determine whether a pretextual stop has occurred. We first determine whether there was reasonable suspicion for the traffic stop. *See id.* ¶ 40. If so, a defendant then has the burden to show pretext by demonstrating, based on the totality of the circumstances, that law enforcement had an ulterior motive—unrelated to the stated reason for the stop—for the traffic stop. *Id.* "If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.* However, "[i]f the defendant shows sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause, then there is a rebuttable presumption that the stop was pretextual[,]" at which point the burden shifts to the state to prove that the officer would have stopped the defendant even without the alternate motive. *Id.*

**{14}**     In this case, officers stopped Defendant for driving 69 miles per hour in a 60-mile-per-hour zone. These facts are sufficient to establish reasonable suspicion to stop Defendant for violating the law. *See generally* NMSA 1978, § 66-7-301 (2015) (designating speed regulations); *see also State v. Vandenberg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (concluding officer's reasonable suspicion of traffic violation supplies the initial justification for stopping a vehicle).

**{15}**     Next, we determine whether Defendant satisfied his burden to show pretext. Defendant placed no evidence in the record supporting a finding that the officers stopped Defendant because he appeared Mexican or that they were even aware prior to the stop that Defendant is Mexican. While information about Defendant's nationality was revealed during the course of the encounter, Defendant has not shown that this was the officers' true motive for stopping Defendant.

**{16}**     Likewise, there is no evidence that officers stopped Defendant in order to meet the requirements of their patrol plan. Although Defendant presented evidence of the NMSP patrol plan, which sets forth traffic citation guidelines, no testimony, including that of the officers, supports the contention that their motive to stop Defendant was to fulfill traffic citation requirements. *See Ochoa*, 2009-NMCA-002, ¶¶ 26, 37.

**{17}** Because Defendant did not place substantial facts in dispute demonstrating the officers' actual motive for the traffic stop was unrelated to the stated justification for the stop, we conclude the district court appropriately ruled the stop was not pretextual.

**C.    The Officers Lawfully Expanded the Scope of the Traffic Stop**

**{18}** Defendant argues that under both the U.S. and New Mexico Constitutions, the officers lacked reasonable suspicion to both question him on matters unrelated to the issuance of a speeding ticket and to request his consent to search the vehicle. Because Article II, Section 10 of the New Mexico Constitution provides greater protection than the Fourth Amendment where law enforcement officers expand the investigation beyond that which initially justifies the stop, *State v. Leyva*, 2011-NMSC-009, ¶ 55, 149 N.M. 435, 250 P.3d 861, we need only analyze Defendant's claims under our state constitution. *See State v. Olson*, 2012-NMSC-035, ¶ 10, 285 P.3d 1066.

**{19}** In evaluating the reasonableness of a traffic stop under our state constitution, we adhere to the two-part test in *Terry v. Ohio,* 392 U.S. 1, 20 (1968). *Leyva*, 2011-NMSC-009, ¶¶ 10, 55. "The two-part *Terry* analysis looks at [1] whether the officer's action was justified at its inception, and [2] whether [the officer's action during the investigatory detention] was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* ¶ 10 (first two alterations in original) (internal quotation marks and citation omitted).

**{20}** Our cases unquestionably permit officers to gradually respond to the evolving circumstances of a traffic stop. *See State v. Funderburg*, 2008-NMSC-026, ¶ 28, 144 N.M. 37, 183 P.3d 922. To expand the scope of investigation, "[a] law enforcement officer must have reasonable and articulable suspicion that other criminal activity has been or may be afoot." *Leyva*, 2011-NMSC-009, ¶ 59 (internal quotation marks and citation omitted). When examining whether criminal activity may have been afoot, we "must necessarily take into account the evolving circumstances with which the officer was faced[.]" *Funderburg*, 2008-NMSC-026, ¶ 16 (alteration, internal quotation marks, and citation omitted).

**{21}** Under the circumstances of the current case, the officers lawfully expanded the scope of the traffic stop. The officers' preliminary questions to Defendant, including requesting his license and the vehicle registration, were reasonably related in scope to the matter of issuing a traffic citation. *See State v. Taylor*, 1999-NMCA-022, ¶ 14, 126 N.M. 569, 973 P.2d 246 ("Once a police officer has made a valid investigatory stop . . . the officer is entitled to verify that the driver is both licensed and driving a car that is registered and insured." (internal quotation marks and citation omitted)), *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶ 17 n. 1. The officers were justified in asking Defendant follow-up questions about personal information in order to complete the traffic citation. *See State v. Duran*, 2005-NMSC-034, ¶ 36, 138 N.M. 414, 120 P.3d 836 (recognizing that officers may ask follow up questions to confirm or dispel any suspicions arising from a defendant's answers), *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶ 17. The officers testified that Defendant's responses to these

questions, including giving a name that differed from his license and then denying he did so, raised their suspicions, such that the officers formed a reasonable suspicion that Defendant may have been attempting to conceal his identity. *See Funderburg*, 2008-NMSC-026, ¶¶ 20-25 (discussing cases where drivers' incomplete responses to officers' questioning and name discrepancy between license and rental contract further contributed to officer suspicions of criminal activity during traffic stops).

**{22}** As the stop progressed, evolving circumstances gave rise to independent reasonable suspicion that criminal activity was afoot. In an attempt to locate additional identifying information, Defendant voluntarily provided his wallet to Officer Skidmore, who noticed a large amount of cash inside. Defendant then stated he lived in Taos, but did not know his address. Thereafter the officers received conflicting responses from Defendant and Passenger about their travel plans. *See id.* ¶ 25 (concluding "conflicting information [officers] received from the drivers and passengers" constituted reasonable suspicion that drugs were inside vehicle).

**{23}** Defendant's characterization of the traffic stop parses out the circumstances and offers lawful explanations for Defendant's responses and possession of the cash. The correct standard, however, views the totality of the circumstances and acknowledges that reasonable suspicion can develop from "wholly lawful conduct." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted); *see also Martinez*, 2018-NMSC-007, ¶ 12 ("On appeal, we must review the totality of the circumstances and must avoid reweighing individual factors in isolation."). Viewing the totality of the circumstances, Defendant's responses to the officers' inquiries created more questions and raised suspicions. We conclude the State met its burden of showing the officers' questioning was not unreasonable under our Constitution. We affirm the district court's ruling that the officers' expansion of the stop, including requesting to search the vehicle, was permissible and reasonable.

## D.    Defendant Voluntarily Consented to the Search of the Vehicle

**{24}** Defendant contends the search of the vehicle was unconstitutional, arguing both that his consent was not voluntary and also that the consent was not sufficiently attenuated to purge it of the unlawful, expanded seizure. Because we conclude the officers lawfully expanded the stop, we likewise conclude Defendant's consent was not tainted by such a lawful expansion. *See State v. Williamson*, 2000-NMCA-068, ¶ 17, 129 N.M. 387, 9 P.3d 70 ("Because we find that [the d]efendant was legally detained and that [the officer's] questioning was a legitimate extension of a lawful investigation, [the d]efendant's consent cannot be invalidated on this basis.").

**{25}** The district court determined that Defendant voluntarily consented to a search of the vehicle, which is a question of fact to be determined from the totality of the circumstances. *See State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. We consider three factors in determining whether consent is voluntary: "(1) the consent must be unequivocal and specific, (2) the consent must be given without duress or coercion, and (3) the first two factors must be assessed with a presumption against

the waiver of constitutional rights." *Id.* ¶ 20. In conducting our review, "the question is whether the trial court's decision is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *State v. Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10 (alterations, internal quotation marks, and citation omitted).

**{26}** The State's video and testimonial evidence demonstrates Defendant's specific and unequivocal consent to the search. Although Defendant initially expressed hesitation about the search, the video shows he appeared to change his mind once Officer Skidmore assured Defendant he would not disturb his daughter, who was in the vehicle. The officers testified that Defendant gave a direct affirmative oral response to Officer Skidmore's request for consent and further provided a clear affirmative response by shaking his head yes. *See id.* ¶ 16 ("[A]n affirmative and direct oral response to an officer's request to search constitute[s] specific and unequivocal consent."). Defendant's initial hesitation does not render his consent involuntary. *See id.* ¶¶ 5-6, 35 (describing the defendant's initial hesitation in response to officer's request to search, and ultimately holding the consent was voluntarily given).

**{27}** Defendant argues his consent was not voluntary because it was the product of duress and coercion by the officers. "Coercion involves police overreaching that overcomes the will of the defendant." *Id.* ¶ 23 (internal quotation marks and citation omitted). Specific factors that may indicate coercion include threats of violence or arrest, lengthy questioning, the use of force, brandishing weapons, or promising leniency in exchange for consent. *Id.*

**{28}** The evidence does not indicate the officers overreached or overcame Defendant's will. Officer Skidmore's requests to search the vehicle were part of a brief, non-threatening conversation with Defendant. Although Defendant speaks limited English, the officers testified he was able to communicate with them in English throughout the traffic stop, and nothing suggests that Defendant was confused or coerced by the straightforward question of whether officers could search the vehicle. Further, the record shows the officers acted in a polite, calm demeanor and that the traffic stop took place in a public area during the day. We agree with the State that the circumstances Defendant points to—armed officers, patrol car lights, and officer control over Defendant's driver's license—are present in nearly every traffic stop and are not inherently coercive. *See, e.g.*, *State v. Carlos A.*, 2012-NMCA-069, ¶¶ 22-24, 284 P.3d 384 (assessing the totality of the circumstances and upholding the defendant's consent where encounter took place quickly in a public setting, the contact was not hostile, and the officer did not exert any unusual pressure on juvenile suspect).

**{29}** We also agree with the State that the record does not support Defendant's argument that his will was overcome by overreaching, repeated requests. In the span of just a few minutes, Officer Skidmore asked for permission to search once, received a response that Defendant's daughter was in the vehicle, was interrupted by a phone call, resumed speaking with Defendant, informed Defendant he would not disturb his daughter, and received Defendant's consent to search. During the conversation, Defendant stood face to face with Officer Skidmore and was not handcuffed or

otherwise restrained. These circumstances are not comparable to those cases where we have found coercion based in part on repeated requests to search. *See, e.g., State v. Pierce*, 2003-NMCA-117, ¶ 21, 134 N.M. 388, 77 P.3d 292 (determining consent was not voluntary where the defendant was detained for over twenty minutes, sitting on a curb and handcuffed while two officers stood over him and repeatedly pressed the defendant for information).

**{30}**   Defendant further contends his consent was coerced because he did not know he could refuse a search of the vehicle. "We have previously stated that proof of knowledge of the right to refuse is not required in order to have effective consent." *State v. Flores*, 2008-NMCA-074, ¶ 16, 144 N.M. 217, 185 P.3d 1067 (internal quotation marks and citation omitted). "Rather, the presence or absence of such knowledge is but one factor to consider in the matrix to determine whether a consent to search is voluntary." *Id.*

**{31}**   Viewing the evidence in the light most favorable to the district court's ruling, we hold there was substantial evidence to support a finding that Defendant's consent to the search was voluntarily given without duress or coercion. We therefore affirm the district court's denial of Defendant's motion to suppress the evidence discovered in the search.

### E.   The State Should Not be Sanctioned for Failure to Gather Evidence

**{32}**   Next, Defendant contends that the district court erred by denying his motion to suppress the evidence and to preclude the officers from testifying about the stop as a sanction against the State for Officer Skidmore's allegedly deliberate, bad faith failure to collect evidence. Defendant bases his claim on the instances in portions of the dash cam video of the traffic stop in which Officer Skidmore turned off his audio recording device.

**{33}**   Our Supreme Court has adopted "a test to determine whether the [s]tate should be sanctioned for failure to gather evidence from a crime scene" that considers both the interest of the defendant in obtaining a fair trial and the interest of the state in engaging in effective "law enforcement, convicting guilty defendants, and revealing the truth in criminal proceedings." *State v. Ware*, 1994-NMSC-091, ¶ 23, 118 N.M. 319, 881 P.2d 679. "First, as a threshold matter the evidence that the [s]tate failed to gather from the crime scene must be material to the defendant's defense." *Id.* ¶ 25. "If the evidence is material to the defendant's defense, then the conduct of the investigating officers is considered" to determine whether the officers acted in bad faith or were grossly negligent. *Id.* ¶ 26.

**{34}**   Whether evidence is material is a question of law. *See id.* ¶ 25. "Evidence is material only if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Id.* (alteration, internal quotation marks, and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citations omitted).

**{35}**     Defendant does not demonstrate the missing audio is material to his defense because he does not explain how the outcome would have differed if the full audio had been available. Rather, Defendant contends that the portions of the video without audio are material because an appropriate analysis of Defendant's constitutional arguments requires the courts to evaluate all surrounding circumstances, namely the claimed escalating suspicion and consent. Defendant's contention requires pure speculation as to the materiality of the missing audio, and does not demonstrate that the missing evidence prejudiced his defense. *See State v. Imperial*, 2017-NMCA-040, ¶ 16, 392 P.3d 658 ("Prejudice must be more than speculative; the party claiming prejudice must prove prejudice—it is not enough to simply assert prejudice." (internal quotation marks and citation omitted)).

**{36}**     Our own review of the video does not support an assertion that the missing audio was material. Although Officer Skidmore did turn off the audio recording feature at various points during the stop, he recorded audio of all his interactions with Defendant. These interactions form the material facts of the officers' escalating suspicion and Defendant's consent. In the first suppression hearing, Defendant failed to elicit any testimony from the officers regarding the materiality of the missing audio, instead centering his questions to the officers on Officer Skidmore's reasons for turning off the audio. This line of questioning has no bearing on the materiality of the missing audio, but rather concerns the conduct of the officer. We will not consider the officer's conduct until the threshold factor—materiality—is established. *See Ware*, 1994-NMSC-091, ¶¶ 25-26 (stating that materiality is a "threshold matter" and that the investigating officer's conduct is considered only "[i]f the evidence is material to the defendant's defense"). Because Defendant does not provide sufficient explanation as to how the missing audio would have changed the outcome of the case, he fails to establish the materiality of the missing evidence. Accordingly, we affirm the district court's denial of Defendant's request for sanctions against the State.

## F.     Defendant Failed to Adequately Preserve His *Miranda* Argument

**{37}**     Lastly, Defendant argues that his incriminating statements, acknowledging ownership of the drugs and cash inside the vehicle, should be suppressed because he was not sufficiently advised of his Fifth Amendment right against self-incrimination in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). In response, the State contends Defendant's failure to develop his claim below precludes appellate review. We agree with the State.

**{38}**     In district court, Defendant presented his *Miranda* issue in a few conclusory sentences in his second motion to suppress. In that suppression motion, Defendant admitted he was read the *Miranda* warnings in English, but claimed he told the officer that he did not understand them. The motion stated that Officer Skidmore responded to Defendant's asserted confusion with a materially misleading summary of the *Miranda* warnings, informing Defendant he did not have to talk with the officers unless he wanted a lawyer. Defendant's motion concluded that, because Defendant admitted the cocaine

belonged to him after having been given incorrect *Miranda* warnings, his admission must be suppressed.

**{39}**   Despite the untimeliness of Defendant's second suppression motion, the district court held a second suppression hearing, in which Defendant did not pursue his argument that the *Miranda* warnings were inadequate. Defendant declined the district court's offer to present any witness testimony. Instead, Defendant directed the district court's attention to the video recording, already in evidence, and chose to concentrate his arguments almost entirely on matters that already had been addressed during the first suppression hearing. Defendant briefly noted he was given a misleading summary of the *Miranda* warnings, but then immediately launched into unrelated allegations about the traffic stop.

**{40}**   Defendant also argued at the hearing that the *Miranda* warnings should have been given earlier because Defendant was not free to leave. The district court's only *Miranda* ruling was that Defendant was not in custody *before* the search of the vehicle and thus *Miranda* warnings were not then required. Defendant argues on appeal that this ruling was clear error because it misconstrues the argument made in his second suppression motion. We are not persuaded this is the fault of the district court, but rather results from Defendant's failure to adequately "alert the mind of the trial court to the claimed error" of the inadequacy of the *Miranda* warnings. *State v. Morgan*, 2016-NMCA-089, ¶ 32, 382 P.3d 981.

**{41}**   In order "[t]o preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked." Rule 12-321(A) NMRA; *see State v. Lamure*, 1992-NMCA-137, ¶ 13, 115 N.M. 61, 846 P.2d 1070 ("A party must invoke a ruling from the trial court in order to preserve an issue for appeal; it is not enough to simply make a motion.") . We have held that a written motion will not sufficiently preserve an issue and invoke a ruling where that issue is not pursued and developed at the hearing on the motion. *See State v. Scharff*, 2012-NMCA-087, ¶ 19, 284 P.3d 447 ("Defendant initially raised the pretext argument in her written pleadings related to the suppression motion [but] later failed to raise the issue during the suppression hearing and did not invoke a ruling by the district court on the pretext issue.").

**{42}**   Because Defendant failed to pursue his contention that his *Miranda* warnings were inadequate during the suppression hearing on his motion, he failed to preserve the issue and invoke a ruling, and therefore we cannot review this issue for reversible error. *See, e.g.*, *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (explaining that where the issue is preserved, our scrutiny on appeal is to review for reversible error). Moreover, while we may exercise discretion to review unpreserved issues if they involve general public interest, fundamental error, or fundamental rights, *see* Rule 12-321(B), we generally do not do so when these exceptions are not raised on appeal. *See State v. Joanna V.*, 2003-NMCA-100, ¶ 10, 134 N.M. 232, 75 P.3d 832, *aff'd*, 2004-NMSC-024, 136 N.M. 40, 94 P.3d 783 (declining to review an issue on appeal where the issue was not preserved below and where counsel failed to argue any exception regarding the general public interest, fundamental error, or

fundamental rights). Defendant has not asked us to review his *Miranda* arguments under these exceptions, and consistent with our precedent we decline to do so. *See id.*; *see also State v. Jason F.,* 1998-NMSC-010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (declining to review a party's unpreserved argument when counsel made no argument on appeal regarding the exceptions to the preservation requirement).

**CONCLUSION**

**{43}** For the foregoing reasons, we affirm the district court's orders denying Defendant's motions to suppress.

**{44} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**KRISTINA BOGARDUS, Judge**