This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellant,

v.                                                    **NO. 30,798**

**CARL VAN WALTON,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Robert Schwartz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Gorence & Oliveros, P.C.
Robert J. Gorence
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**VIGIL, Judge.**

The State appeals from an order of the district court granting Defendant's motion to suppress evidence found in the search of Defendant's luggage. We affirm.

## I.  Background

For the factual background in this case, we rely primarily on the district court's formal findings of fact. We supplement these findings with additional information upon which the record is unequivocal.

AMTRAK provides Passenger Name Records (PNRs) to Drug Enforcement Agency (DEA) agents. PNRs contain the name of the passenger, the date and manner of the ticket purchase, the train's destination, and included stops. Agent Perry, a special agent with the Interdiction Unit of the DEA, reviewed the PNRs in this case. He testified that DEA agents traditionally look for people who purchase their tickets with cash, purchase one-way tickets, or purchase their tickets close to the departure date.

On February 8, 2008, Agent Perry and Agent Maestas, another special agent with the Interdiction Unit of the DEA, boarded a train in Albuquerque for the purpose of intercepting any drugs, drug couriers, and/or drug-related monies that might be traveling onboard. Neither agent was uniformed. The agents had a list of passengers with whom they wished to speak. Defendant's name was on the list because on February 6, 2008, Defendant purchased a ticket with cash for a train that was

departing on February 7, 2008, from Oakland, California, to Kansas City, Missouri. In addition, Defendant had not provided a phone number on the train reservation, so he could be notified in the event the departure date or time was delayed.

Agent Perry approached Defendant, who was seated in the sightseeing car. The agent displayed his badge, and said, "excuse me, I'm a police officer. May I speak with you?" Defendant responded "yeah." Agent Perry asked Defendant if he could see his ticket. Defendant responded that the ticket was in his bedroom, got up from his seat, and began to walk away toward his sleeper cabin. Agent Perry followed.

Just before reaching his cabin, Defendant found his ticket in his jacket pocket and handed it to Agent Perry. Agent Perry reviewed the ticket information, returned it to Defendant, and asked to see Defendant's identification. Defendant produced an ID and Agent Perry verified that Defendant was one of the individuals with whom he wished to speak. Throughout the course of the encounter, the agent never informed Defendant that he had the right to refuse to answer his questions. Defendant testified that he did not think that he had a choice in responding to Agent Perry's questions.

Agent Perry then explained his duties as a drug interdiction officer, and asked Defendant if he had any contraband, narcotics, or explosives. Defendant indicated that he did not. Agent Perry then asked Defendant if he had any luggage. When Defendant responded that he did, Agent Perry asked Defendant if he could search the

3

luggage. Defendant stated "yeah, I guess." Agent Perry then asked if Defendant would prefer that he search the luggage in the cabin or in the hallway. Defendant responded "it doesn't matter." Agent Perry then asked for permission to enter the cabin to retrieve Defendant's luggage, and Defendant once again stated "yeah." Agent Perry brought Defendant's bag into the hallway and unzipped the bag, revealing approximately two pounds of marijuana.

Below, Defendant moved the district court to suppress the evidence seized in the course of the search. After conducting a hearing, the district court granted Defendant's motion, concluding that Defendant's encounter with Agent Perry was not consensual in nature, and alternatively, that Defendant's consent was involuntary and not sufficiently unambiguous. This appeal followed.

## II. The Nature of the Encounter

Reasonable suspicion was not present in this case. Picking Defendant's name because he fit a profile DEA agents traditionally look for, without more, does not amount to reasonable suspicion. "A reasonable suspicion is a particularized suspicion, based on all the circumstances, that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. Thus, our review is whether Agent Perry's encounter with Defendant amounted to a suspicionless seizure under the Fourth Amendment.

Conversely, the State argues that the entire encounter between Defendant and Agent Perry was consensual and thus, there was no seizure.

"In reviewing a trial court's denial of a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts[,] which is subject to de novo review." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442 (alteration in original) (internal quotation marks and citations omitted). "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "Factfinding frequently involves selecting which inferences to draw." *State v. Lopez*, 109 N.M. 169, 171, 783 P.2d 479, 481 (Ct. App. 1989), *modified by Jason L.*, 2000-NMSC-018, ¶ 19. Therefore, we draw all reasonable inferences in the evidence in favor of the district court's findings. *Jason L.*, 2000-NMSC-018, ¶ 11. The fact that another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence. *See Lopez*, 109 N.M. at 171, 783 P.2d at 481.

"[A] person has been seized . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not

free to leave." *State v. Garcia*, 2009-NMSC-046, ¶ 37, 147 N.M. 134, 217 P.3d 1032 (alterations in original) (internal quotation marks and citation omitted). "Conversely, [a]s long as the person to whom [the officer's] questions are put remains free to disregard the questions and walk away, no seizure has occurred." *Id.* (alterations in original) (internal quotation marks and citation omitted). "The police do not need any justification to approach a person and ask that individual questions; however, the officer may not convey a message that compliance with their requests is required." *Jason L.*, 2000-NMSC-018, ¶ 14 (internal quotation marks and citation omitted).

"The determination of a seizure has two discrete parts: (1) what were the circumstances surrounding the stop, including whether the officers used a show of authority; and (2) did the circumstances reach such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave?" *Id.* ¶ 19. "The first part is a factual inquiry, which we review for substantial evidence. The second part is a legal inquiry, which we review de novo." *Id.*

"To determine whether a reasonable person would feel free to leave, our courts examine (1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Garcia*, 2009-NMSC-046, ¶ 40 (internal quotation marks and citation omitted). The determination of whether an encounter is consensual or constitutes a seizure is highly fact dependent. *State v. Figueroa*, 2010-

NMCA-048, ¶ 33, 148 N.M. 811, 242 P.3d 378, *cert. granted*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182.  In making this determination, the court should consider the sequence of the officer's actions and how a reasonable person would perceive those actions.  *State v. Williams,* 2006-NMCA-062, ¶ 12, 139 N.M. 578, 136 P. 3d 579.

Here, Agent Perry introduced himself as a police officer and displayed his badge; Defendant was asked to produce documents, including his ticket and identification; Agent Perry pursued Defendant to his cabin where he questioned Defendant about criminal activity.  Further, at no point did the agent tell Defendant he was free to leave or that he was not required to answer the questions, and Defendant testified that he did not feel that he could refuse the agent's requests.  While case law has not required such advice, its absence is a relevant factor.  *See, e.g., Jason L.*, 2000-NMSC-018, ¶¶ 17-18 (observing that circumstances such as the threatening presence of several officers, accusatory or intrusive questioning of the defendant, and failure to inform the defendant that he is free to leave or not required to answer questions, are all factors that could lead a reasonable person to believe he or she is not free to terminate an encounter with the police); *State v. Soto*, 2008-NMCA-032, ¶ 12, 143 N.M. 631, 179 P.3d 1239 (holding that a cyclist was

seized when officers pulled up next to him, requested identification, and questioned him).

On the evidence presented at the hearing, viewed in the light most favorable to the district court ruling, there was substantial evidence supporting a determination that Agent Perry detained Defendant with a show of authority and that a reasonable person in Defendant's position would not have believed he was free to leave. Accordingly, we need not reach the issue of whether Defendant's subsequent consent was sufficiently specific and unequivocal, and we affirm the order of the district court.

**IT IS SO ORDERED.**

 

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**