This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellant,

v.             **No. A-1-CA-35593**

**MICHAEL TAYLOR,**

 Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci E. Beyer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Clara Moran, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Matthew J. Edge, Assistant Public Defender
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     The State appeals from a suppression order of the district court. After obtaining evidence resulting from a traffic stop, the State charged Defendant Michael Taylor with possession of a controlled substance and possession of drug paraphernalia. Defendant filed a motion to suppress, arguing that the officer impermissibly expanded the scope of his investigation without the requisite reasonable suspicion, and that the preceding illegality tainted Defendant's consent to the search. The district court granted Defendant's motion, concluding that the officer obtained the drugs and paraphernalia as a result of an illegal search. On appeal, the State argues that the search was a result of a consensual encounter between Defendant and law enforcement or, in the alternative, that reasonable suspicion existed to justify an expansion of the stop. We affirm the district court's order.

**BACKGROUND**

{2}     Because this is a memorandum opinion and the parties are familiar with the facts, we set forth only the factual and procedural events required to place our analysis in context. We also note that the parties do not disagree substantially about the facts.

{3}     At a hearing on the motion to suppress, Sergeant Jaime Quezada of the Las Cruces, New Mexico Police Department testified that Defendant was driving a tractor-trailer through a construction zone on Interstate 10 around 12:30 a.m. on August 28, 2015. Sergeant Quezada saw the truck veer outside of its lane and knock over two or

three orange construction barrels. Sergeant Quezada followed the truck out of the construction zone before initiating a stop. The truck pulled to the right side of the road. Sergeant Quezada testified that Defendant was slow to stop. While approaching the driver, Sergeant Quezada noticed unusual features of the truck, such as "voids" or areas that could be compartments.

{4}    Sergeant Quezada contacted Defendant, and asked him to step out of the vehicle with his driver's license and other documents. Sergeant Quezada asked Defendant to meet him at his police vehicle with the paperwork. According to Sergeant Quezada, Defendant had a glazed look in his eyes, and seemed somewhat nervous and fidgety to the officer. Defendant gave Sergeant Quezada his documents; Sergeant Quezada then asked Defendant to return to the tractor-trailer while Sergeant Quezada verified things. Defendant then volunteered that he was not supposed to be in New Mexico because of a methamphetamine-related criminal case involving the Vagos Motorcycle Club. Due to that association, Sergeant Quezada called for a second officer unit for his safety. Eventually, Sergeant Quezada confirmed that Defendant was subject to federal pretrial release.

{5}    Sergeant Quezada had Defendant return to his truck while he examined Defendant's paperwork, noting that Defendant had slept for only four hours and that there were some inconsistencies regarding weigh-ins. Around this time, a

3

second police officer arrived with a canine. Both officers activated their vehicles' emergency lights during this encounter.

**{6}** Sergeant Quezada wrote Defendant a warning citation, and asked Defendant to come back out to his police vehicle. Sergeant Quezada returned Defendant's paperwork, told Defendant he appreciated his cooperation, and said Defendant was "free to go." Sergeant Quezada opened the passenger door of his unit and put his ticket book inside. At that point, Defendant was around the truck, almost out of the officer's sight (approximately ten to fifteen feet away), and Sergeant Quezada "did call out to him again and asked him if I could talk to him and ask him . . . a few more questions." Defendant agreed and walked back towards Sergeant Quezada and his vehicle.

**{7}** Sergeant Quezada addressed Defendant in a non-threatening tone. Sergeant Quezada asked Defendant about his travel plans, and asked Defendant for permission to search the trailer for contraband with a drug-sniffing canine. Defendant consented, and before the search began, Defendant volunteered that there was methamphetamine in his backpack in the front of the truck. Sergeant Quezada asked Defendant to sit in the back of the police vehicle while the officer located the methamphetamine. Sergeant Quezada then Mirandized Defendant, who gave a statement confirming that he consented to the search and that the methamphetamine belonged to him.

4

**{8}** Defendant testified briefly at the hearing. Defendant stated that he did not feel free to leave, particularly because he was on pretrial release. The district court appears to have accepted this testimony in its findings of fact stating, "Defendant, operating with an understanding that he was not free to go[,] consented to answer Sergeant Quezada's questions; walking back towards Sergeant Quezada's vehicle while Sergeant Quezada walked towards Defendant."

**DISCUSSION**

**I.      Standard of Review**

**{9}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). The appellate court reviews "factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183.

**II.     Expansion of the Stop**

**{10}** To begin, there is a notable difference in interpretation between the United States Constitution and the New Mexico Constitution when it comes to this particular area of search and seizure jurisprudence. *Compare* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against

5

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."), *with* N.M. Const. art. II, § 10 ("The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.").

{11}     United States Supreme Court case law employs a bright-line rule in analyzing the scope of a traffic stop. "The proper Fourth Amendment inquiry . . . is whether an officer's traffic stop questions extended the time that a driver was detained, regardless of the questions' content." *State v. Leyva*, 2011-NMSC-009, ¶ 17, 149 N.M. 435, 250 P.3d 861 (internal quotation marks and citations omitted) (explaining that the Fourth Amendment no longer provides the same protections against expanding the scope of the stop as New Mexico does).

{12}     The New Mexico constitutional inquiry, by contrast, follows a totality of the circumstances approach. The New Mexico Supreme Court rejected "[t]he creation by the United States Supreme Court of a bright-line rule for permissible questioning during traffic stops under the Fourth Amendment [a]s incompatible with the approach

6

. . . adopted in [*State v.*] *Duran*[, 2005-NMSC-034, ¶¶ 33-35, 138 N.M. 414, 120 P.3d 836]," *overruled by Leyva*, 2011-NMSC-009, ¶ 17. According to *Duran*, the proper inquiry, under the New Mexico Constitution, is as follows:

> All questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification for the stop or are supported by reasonable suspicion. This determination must also include an examination of both the length of the detention and the manner in which it is carried out. The length of the detention should be reasonably limited to the time it takes to complete the underlying justification for the stop. Further, the scope of the questioning should be limited, as well.

*Leyva*, 2011-NMSC-009, ¶ 13 (alterations omitted) (quoting *Duran*, 2005-NMSC-034, ¶ 35) (alterations omitted).

{13} In our de novo review of this case, it appears that the district court applied the correct standards under the New Mexico Constitution. The court analyzed specifically the "totality of the circumstances" in its conclusions of law and applied the *Duran* test. While the New Mexico Constitution was not argued with specificity in the briefing or at the hearing, Defendant's original motion to suppress and answer brief cited both Constitutions. In addition, the parties' arguments on appeal involve the application of *Duran*. Therefore, we conduct our analysis accordingly.

{14} The State's brief-in-chief argues that, regardless of whether the encounter became consensual, Sergeant Quezada had reasonable suspicion to detain Defendant beyond a traffic stop. Specifically, the State points to Defendant's erratic driving,

7

including his hesitancy to stop, and the unusual compartment features of the truck that the officer observed. Also, the officer testified that Defendant seemed nervous and fidgety and had glazed eyes. And again, Defendant volunteered that he was not supposed to be in New Mexico, because of a methamphetamine-related criminal case involving the Vagos Motorcycle Club. The State suggests that this combination of circumstances gave rise to a reasonable suspicion that some sort of criminal activity was afoot, whether it was driving while intoxicated, narcotics trafficking, or absconding from law enforcement on the methamphetamine case.

{15} Defendant, on the other hand, argues that law enforcement lacked reasonable suspicion to expand the investigation beyond a traffic stop. The district court agreed with Defendant, finding "Sergeant Quezada did not have the requisite reasonable suspicion to request permission to search Defendant's vehicle, and Defendant was continuously and seamlessly seized throughout the entire encounter."

{16} "The police may make an investigatory stop in circumstances that do not rise to probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated. Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (citations omitted). "[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers

8

articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (alteration, internal quotation marks, and citation omitted).

{17} Under our standard of review of the facts supporting the district court's ruling, Sergeant Quezada's observations of Defendant and his truck during the traffic stop did not provide a reasonable suspicion to continue detaining Defendant beyond the traffic stop. *See id.* ¶ 27 (stating that an officer may "ask minimally intrusive questions to confirm or dispel" reasonable suspicion "arising from the traffic stop, as long as the questions are reasonable and intrude on a person's liberty as little as possible under the circumstances" (internal quotation marks and citations omitted)).

{18} First, Sergeant Quezada noticed only a couple of factors that reasonably could have led him to believe that the Defendant was driving while intoxicated, and those observations arose at the very beginning of the encounter. As the interaction continued, Sergeant Quezada never noted any further signs of intoxication, such as the smell of alcohol, slurred speech, or bloodshot, watery eyes. Further, the State's own argument that Defendant was free to leave contradicts the claim that the officer may have been concerned that Defendant was intoxicated, yet allowed Defendant to take to the roads again. *See Figueroa*, 2010-NMCA-048, ¶ 23, 148 N.M. 811, 242 P.3d 378

(stating that when an initial reasonable suspicion is dispelled, a continued detention or frisk is impermissible).

{19} In addition, under our standard of review, Sergeant Quezada could have no more than a hunch that Defendant either currently was trafficking drugs or was absconding from conditions in another case. First, there was some confusion about whether or not Defendant was subject to conditions of release, and whether Defendant should be detained for allegedly violating those conditions. Further, while Defendant may have been involved somehow with the Vagos Motorcycle Club, the evidence does not show that Sergeant Quezada was able to clarify Defendant's association with the gang. As the district court described it Defendant had "an alleged affiliation in a totally different state with no means of verification available to [Sergeant] Quezada." *See State v. Jones*, 1992-NMCA-064, ¶ 12, 114 N.M. 147, 835 P.2d 863 (rejecting gang membership *alone* as a basis for reasonable suspicion).

{20} Therefore, we affirm the district court's finding that the extended seizure of the Defendant was constitutionally impermissible, and that the officer lacked reasonable suspicion to continue to detain Defendant.

**III. Consensual Encounter**

{21} Since there was no reasonable suspicion to allow Sergeant Quezada to continue to detain Defendant beyond the traffic stop, the seizure of Defendant must fall within

an exception to the warrant requirement to withstand constitutional muster. Consensual searches and seizures are one such exception. *See State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. The State argues that the encounter between Defendant and law enforcement was no longer a seizure at all, but instead became a consensual encounter in the fashion of *Figueroa*. *See* 2010-NMCA-048, ¶ 28. "When determining whether a person is seized we consider all of the circumstances surrounding the incident in order to determine whether a reasonable person would have believed that he or she was not free to leave." *State v. Jason L.*, 2000-NMSC-018, ¶ 15, 129 N.M. 119, 2 P.3d 856 (alteration, internal quotation marks, and citation omitted).

{22}    In *Figueroa*, this Court found that an initial investigatory stop did not evolve into a consensual encounter. This was despite the officer's statement that the defendant was free to go, because the officer immediately embarked upon further questioning, with "no break in time or location, no request for permission to continue with questioning, and nothing indicating that the seizure had changed to anything remotely consensual." 2010-NMCA-048, ¶ 32. We specifically considered out-of-state authorities where "an officer is careful to clearly establish a transformation in the encounter[,]" particularly where an officer requests permission to further question the subject. *Id.* ¶ 33. In *Figueroa*, the nature of the encounter had not truly changed, even

though the officer commented that the defendant was free to go. *Id.* ¶ 32. "While an officer's statement that a suspect is free to go is a relevant consideration, it does not automatically make the encounter consensual thereafter." *Id.* ¶ 30. Instead, we must consider the entirety of the circumstances surrounding the incident. *Id.* ¶ 29. We have emphasized that this is a "highly fact dependent" analysis, where "[n]o single factor is dispositive." *Id.* ¶ 33.

{23} The State argues that the case at hand has significant factual differences from *Figueroa*. The State emphasizes that Sergeant Quezada told Defendant he was free to go, and that Defendant returned to the officer to answer further questions. The State points out that the officer requested permission to ask questions and used a non-threatening tone. The State also relies on the physical distance between Defendant and Sergeant Quezada at the time of the request, as the officer already had allowed Defendant to begin walking back to his truck.

{24} After hearing the testimony of Sergeant Quezada and Defendant, the district court did not find that these facts differed significantly enough from *Figueroa* to change the outcome, and rejected the State's argument. The district court considered all of the circumstances surrounding the incident, including the time of day (sometime after midnight), the presence of two police officers and a canine unit, and the positions of the police vehicles, with flashing lights. The district court also relied on one of the

more unusual circumstances of this case: Defendant moved back and forth between his own truck and the police car during the course of the stop at the request of the officer. "Defendant had previously gone back and forth to his tractor-trailer on two occasions during this encounter, for all he knew this was another one of the ongoing back and forth interactions that had been established as precedence during this traffic stop." The district court also seemed troubled by the officer's investigation into Defendant's pretrial release and alleged gang affiliation as grounds for a consensual encounter. The court noted that New Mexico rejects gang membership *alone* as a basis for reasonable suspicion. *Jones*, 1992-NMCA-064, ¶ 12. Further, the district court found that Defendant was "operating with an understanding that he was not free to go[,]" which was supported by Defendant's testimony and the circumstances.

**{25}** Again, the appellate court reviews "factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *Almanzar*, 2014-NMSC-001, ¶ 9. In this case, the district court's findings of fact were supported by substantial evidence, and, in fact, neither party challenged these findings in any significant way. **{26}**

The State asks us to conclude as a matter of law that the factual differences between this case and *Figueroa* require us to reach the conclusion that this encounter was consensual. We decline to do so. Based on all of the circumstances as found by

13

the district court, a reasonable person in Defendant's position would not have felt free to leave.

**CONCLUSION**

{27}    We affirm the district court's order granting Defendant's motion to suppress evidence.

{28}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____
**JULIE J. VARGAS, Judge**


_____
**STEPHEN G. FRENCH, Judge**

14